IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

R. Scott Guthrie,                          )
                                           )
        Plaintiff,                         )
                                           )
v.                                         )        Case No. 19-00456-CV-W-BP
                                           )
Kansas City Police Board of Police         )
Commissioners et al.,                      )
                                           )
        Defendants,                        )

RECEIVED 2019 DEC -6 PM 2:20 CLERK U.S. DIST. COURT W.D. MO. KANSAS CITY

## PLAINTIFF'S OPPOSITION TO DEFENDANTS WIGGIN'S, PATTON'S AND THE KANSAS CITY, MISSOURI BOARD OF POLICE COMMISSIONERS MOTION FOR SUMMARY JUDGEMENT

Plaintiff, R. Scott Guthrie requests that this Court dismiss the Defendants Kansas City, Board of Police Commissioners and Officers Jamiene Wiggins' and April Patton's Motion for Summary Judgment. In support he states:

### Introduction

Defendants' claims of "Qualified Immunity" are belied by both the Police Coban Video of the traffic stop in question and Defendants Wiggins' and Patton's own testimony. Plaintiff's U.S.C. 1983 claims for (1) Fourth Amendment – unlawful seizure, (2) Fourteenth Amendment - age/race discrimination, and (3) failure to train/supervise against Defendants arising out Plaintiff's November 15, 2014 traffic stop are in fact borne out by a closer look at the evidence.

Not only do the facts support the Plaintiff's claims, they meet the challenge established in Graham v. Conner of the "severity of the crime at issue", "whether the suspect poses an immediate threat to the safety of the officers or other," and "whether he is actively resisting arrest or attempting to evade arrest by flight." There being no serious crime, no threat nor resisting, nor evading and a **dispute of material facts**, Officers Wiggins and Patton are not entitled to Qualified Immunity and protection for the use of excessive force.

## Disputed Facts

Defendant's claim that they had "arguable probable cause" is disputed by the Polices' own Coban video which Plaintiff believes, while difficult to see, does indeed show his use of a turn signal at 44th and the Paseo. Defendant Wiggins' own sworn testimony contradict the certainty of this claim when she says "…I was driving South on Paseo Blvd. around 40[th], 41[st] and Paseo and I noticed there was a car turning going South on Paseo. This was around 44[th] and Paseo…" Officer Patton says in her sworn testimony that "we pulled him over near 4-5, (sic), and Paseo". It is commonly held that "failure to use a turn signal" is a frequently used <u>false</u> claim by Police to establish "probable cause".

So Defendant's Wiggins claim she could see the right rear taillight of a small car turning from her right traveling the same direction late at night from 4 or more city blocks away is not defensible. Justice Ginsburg noted *"where the determination of reasonableness depends on which of two conflicting stories is believed, however, there must be a trial. Once a jury finds, under the Graham standard, that an officer's use of force was objectively unreasonable, the concurrence concludes that 'there is simply no work for qualified immunity inquiry to do'."*

Defendant's claim that "… if an officer arrests a suspect under the mistaken belief that there is probable cause, arguable probable cause exists if the mistake is objectively reasonable" is undermined by Defendant Wiggins' own words when she is heard on the Police Coban video in the patrol car saying "I just wanted to see what he's got" indicating she had no probable cause, rather was on a fishing expedition.

Further, Wiggins implies that Officer Patton, riding in the same patrol car, was not a witness to the Plaintiff's disputed use of his blinker when she says "once I noticed that, I told my partner, this car didn't use his blinker".

## Prolonged Traffic Stop in Extreme Weather

Defendant's claim that "… the entire traffic stop lasted stop lasted only 13 minutes.." neglects to mention **it was 20 degrees the night of the traffic stop** and the Plaintiff was dressed only in a poly cotton shirt wearing no coat or gloves as he could not afford either at the time. It should also be noted that the Plaintiff had turned off his car as precursor to full cooperation and to ensure the safety of the Defendants Officers Wiggins and Patton.

The Plaintiff suffers from Thyroid disease which makes him feel cold all the time, and while the Defendant's surely could not have known this, they should have by exercise of their authority taken responsibility for the Plaintiff's well being when they saw he would be exposed to the elements. **Hypothermia in 20 degree weather can set in within 10 minutes.** Once it was established that the Plaintiff **"did not have a gun"** he should have been allowed to roll up the window or possibly restart his car to stay warm rather than being told "that if he moved he would be removed from the car and arrested" further exposing him to the elements and to harm.

**Substantive Claim**

Plaintiff reasserts his argument that his claims are both valid and demonstrable and that "municipal liability has attached". By Defendant's own Coban video, words and sworn statements there was no probable cause for the traffic stop in question and a clear 4th amendment violation of the Plaintiffs' rights against unreasonable search and siesure.

By one of multiple sworn statements Officer Wiggins says "while I was in the patrol car running his information, two other officers pulled alongside our patrol car and asked if we needed assistance. We said, no, he's just an old man, meaning we don't feel threatened by him". She can be heard repeatedly referring to the Plaintiff as an "old man" and makes reference to him as a "white dude" all the time mocking and laughing at the Plaintiff indicating clear 14 amendment violations of age and racial discrimination.

Lastly, Plaintiffs assertion of "failure to train/supervise" is borne out with a close inspection of Officer Wiggins personnel binder. The Kansas City, Missouri Board of Police Commissioners should have knowand in fact did know at the highest levels that **Officer Wiggins was unfit for duty as a police officer with the Kansas City Police Department and did in fact represent a danger to the public** and should not have been in a patrol issuing tickets, making threats or using excessive force and torture against the public the night in question.

Plaintiff lists the following exhibits to let the "Board" speak for itself in regards to Officer Wiggins' fitness for duty, character and supervision/training:

A. Covban Video highlighted with arrows to show blinker usage. (Must be watched several times paying close attention to the light flashing off the pavement.
B. One of two sworn statement from Officer Wiggins confusion of the location of the events in question.
C. Two of two sworn statement from Officer Wiggins referencing age and lack of threat from the Plaintiff.
D. Sworn statement form Officer Patton indicating confusion of the location of the events in question.
E. Officer Wiggins' <u>termination letter</u> from the Chief of Polices' office for **"unsatisfactory performance"**.
F. Letter from Captain Jeff Emery, Commander Employment Unit regarding **"both her Captain and Major recommend she not be eligible for rehire…"**
G. Memo from Chief Forte' overriding his own command structure to rehire Officer Wiggins as a lateral from the KCI Police Department.
H. Memo indicating that in spite **of "HR staff recommended 'NO' for lateral rehire , DC M disagreed, recommended approval and Chief approved"**.

I. Failed to pass a polygraph – "No opinion could be rendered regarding the truthfulness of applicant's answers to relevant questions due to physiological responses that were inconclusive in nature and could not be evaluated".

J. Reprimand for failure to follow procedure in the Sofia Salva case by properly notifying a supervisor of prisoner Salva's dire medical condition and potential loss of the life her unborn child.

K. Memorandum further explaining Officers Wiggins' role in the Sofia Salva case and her indifference to her calls for hospital care by "...provided Ms. Salva with tampons...".

L. Sworn statement of Officer Wiggins regarding acknowledging Ms. Salva's claim that she did in fact tell officer Wiggins she needed to go to the hospital and that she only offered her tampons.

M. **Letter from DC Nichols assailing Officer Wiggins lack of character and basic humanity and complete indifference to the suffering of others.**

N. Memo Chief Nichols"... recommending a letter of reprimand" for Officer Wiggins role in the Sofia Salva case.

O. Memo from the FBI indicating Officer Wiggins "... failed to disclose a prior arrest".

P. Application indicating short tenure in the Missouri State Highway Patrol academy.

Q. Application form indicating "...(Officer Wiggins) has learned from her mistakes in the academy".

R. Application form indicating concern that Officer Wiggins may have been released from previous employment "...because of unsatisfactory performance".

S. Application memo indicating that Officer Wiggins did not maintain valid license and registration on her car during the application process to be a member of the KCPD.

T. Application memo that indicates Officers Wiggins did not maintain a Valid driver's license during the application process to become a member of the KDPD.

U. Letter of write up regarding **"Accidental Discharge of Firearm by Recruit Wiggins"**.

V. Evaluation memorandum indicating "inappropriate" laughing at prisoners in her charge which is **consistent with Officer Wiggins' raucous laughter in the patrol car mocking the Plaintiff "...are my civil rights being violated here"!**

W. Farmer's Almanac recording temperature on November 15, 2014 as 17.1 degrees.

Respectfully Submitted,

Date: December 6, 2019

/s/ Scott Guthrie

CC: Ms. Diane Peters – Assistant Attorney General